490 So.2d 1288 (1986)
Henry W. FOX, Appellant,
v.
STATE of Florida, Appellee.
No. 85-1118.
District Court of Appeal of Florida, Fifth District.
June 19, 1986.
Rehearing Denied July 15, 1986.
*1289 James B. Gibson, Public Defender, and Nancye R. Crouch, Asst. Public Defender, Daytona Beach, for appellant.
Henry W. Fox, pro se.
Jim Smith, Atty. Gen., Tallahassee, and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Judge.
This appeal[1] is from an order adjudging appellant to be in criminal contempt of court and ordering that he be incarcerated. For the reasons stated, we must reverse the order.
In 1979, appellant pled guilty to a charge of armed robbery and was sentenced to imprisonment for 10 years. In 1985, appellant filed a motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The court ordered the State to respond, and set an evidentiary hearing for June 26, 1985. Responding to the motion, the State asserted that the motion was a sham and was untruthful. On June 20, 1985, based on the State's response, the trial court issued an order requiring the defendant to show cause at 1:30 P.M. on June 26, 1985, "why you should not be held in contempt of court for filing sham ... pleadings herein and for allegations contained in your Motion for Post Conviction Relief misrepresenting true facts." The rule to show cause was served on appellant at the Volusia County jail at 6:50 A.M. on June 26, 1985, slightly more than six hours before the hearing.
Prior to the June 26th hearing, the defendant filed a motion indicating that he was indigent and requested the appointment of counsel. The request was renewed at the hearing and denied. The trial court denied the motion for post conviction relief, then adjudged defendant in contempt for filing a "frivolous pleading with misrepresentations of fact and law" after hearing from the defendant on matters in mitigation. Defendant was sentenced to serve 60 days in the County jail consecutive to the sentence he was then serving. Only the contempt order is appealed.
The appellant asserts that the rule to show cause charged him with indirect criminal contempt and that Florida Rule of Criminal Procedure 3.840 therefore applies. That rule, among other things, requires that a rule to show cause be issued stating the essential facts constituting the criminal contempt charged, that the defendant be allowed a reasonable time for the preparation of his defense after service of the order, and provides that the defendant is *1290 entitled to be represented by counsel. The defendant asserts that the six hour period between service of the order and the time set for hearing was not a "reasonable time allowed for preparation of the defense" and that he had a constitutional right to the appointment of counsel because he was indigent. The State, on the other hand, asserts that this was a direct criminal contempt, therefore punishable summarily by the court under Florida Rule of Criminal Procedure 3.830.[2]
The courts appear to be in agreement that the filing of a non-meritorious motion for post-conviction relief containing sworn allegations which are obviously false and known to be so by the petitioner can be treated as a criminal contempt of court. See, e.g. Manning v. State, 234 So.2d 16 (Fla. 2d DCA 1970); Nelson v. State, 208 So.2d 506 (Fla. 4th DCA 1968); Breamfield v. State, 166 So.2d 484 (Fla. 3d DCA 1964). We are in complete accord with this rationale, because something must be done to stop the flow of patently false and frivolous claims for post-conviction relief. Such conduct tends to obstruct or interfere with the administration of justice by clogging the judicial pipeline with matters that are clearly untenable, depriving the trial judges of the time and opportunity to give proper and prompt attention to justiciable matters which truly deserve their consideration. What is not so clear, however, is whether such contempt is direct or indirect. The Manning court held that such a pleading constitutes an indirect criminal contempt. The Nelson court did not state which it was, but the context of the opinion leads the reader to believe that it was treated as a direct criminal contempt because of the summary manner in which the contempt was adjudicated. However, in Bumgarner v. State, 245 So.2d 635 (Fla. 4th DCA 1971), without reference to its earlier decision in Nelson, the court held that the filing of a motion for post-conviction relief predicated on false grounds would be an indirect criminal contempt of court. In Fair v. Lo Scalzo, 287 So.2d 327 (Fla. 2d DCA 1973), cert. denied, 297 So.2d 309 (Fla. 1974), without mentioning or attempting to distinguish its earlier decision in Manning, the court held that the filing of a pleading which contained contemptuous statements about the trial judge constituted direct criminal contempt, yet it noted that the defendant had been accorded all the due process procedures for indirect contempt.
The State, as did some of the earlier cases, relies on State v. Sullivan, 157 Fla. 496, 26 So.2d 509 (1946), a case in which the supreme court appears to hold that the filing of an affidavit alleging improper conduct of the trial judge would be treated as a direct contempt of court. However, a careful reading of the opinion discloses that the court was actually treating the matter as an indirect criminal contempt as that procedure is known today, when it said:
Due process of law, in the prosecution of contempt, except that committed in open court and in the presence of the trial judge, requires that the accused should be advised of the charge and be given a reasonable opportunity to meet it by way of defense or explanation. This includes the assistance of counsel, if requested, and the right to call witnesses to give testimony relevant to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty imposed. [Citations omitted].
*1291 Id. 26 So.2d at 518. The Sullivan decision pre-dates the adoption of Rule 3.840.
In Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977), the court differentiated between direct and indirect criminal contempt stating:
Where the act constituting the contempt is committed in the immediate presence of the court, this contempt is defined as direct. Where an act is committed out of the presence of the court, the proceeding to punish is for indirect (sometimes called constructive) contempt. A review of the Rules of Criminal Procedure ... reflects the greater procedural due process safeguards imposed when proceedings are for indirect criminal contempt.
Id. at 425. The Pugliese court also rejected an argument similar to that made by the State sub judice that when the trial court heard the defendant's testimony, the conduct constituting the contempt was then committed in the actual presence of the court, saying that:
Were this contention accepted, the distinction between direct and indirect criminal contempt would be obliterated because the judge must always hear some testimony in his presence at a hearing on indirect contempt concerning conduct which took place outside his presence. We reject any such notion that would expunge the distinction between direct and indirect contempt.
Id. at 426. We do not believe that the court "saw or heard the conduct constituting the contempt committed in the actual presence of the court" (Rule 3.830) merely because the defendant here filed the motion in question. It is clear from the rule to show cause and from the order adjudging defendant in contempt that the adjudication was based on the pleading, not on what happened in the courtroom. Finally, any doubt as to which type of contempt is involved should be resolved in favor of the contemnor. Fisher v. State, 248 So.2d 479 (Fla. 1971); Turner v. State, 283 So.2d 157 (Fla. 2d DCA 1973).
Serving the rule to show cause on defendant some six hours before the hearing did not provide him with the required reasonable opportunity to prepare his defense. Criminal contempt proceedings are effectively criminal in nature and persons accused of criminal contempt are as much entitled to their basic constitutional rights as are those accused of violating criminal statutes. Aaron v. State, 284 So.2d 673 (Fla. 1973). Anyone facing criminal contempt charges is under threat of imprisonment. Andrews v. Walton, 428 So.2d 663 (Fla. 1983). It follows then, that because a contemnor may be deprived of his physical liberty, fundamental fairness requires that counsel be appointed for him if he is indigent. See Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); Andrews v. Walton, supra.
The judgment of contempt is reversed and the cause is remanded for further proceedings consistent herewith.
REVERSED and REMANDED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] The appellant's public defender initially filed an "Anders" brief (Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)) asserting that no arguable issue could be raised in this appeal, and requested leave to withdraw as counsel. We denied the motion to withdraw and ordered both parties to brief the issues which are discussed in this opinion. Briefs on these issues have now been filed and have been considered by the court.
[2] Florida Rule of Criminal Procedure 3.830 states:

A criminal contempt may be punished summarily if the court saw or heard the conduct constituting the contempt committed in the actual presence of the court. The judgment of guilt of contempt shall include a recital of those facts upon which the adjudication of guilt is based. Prior to the adjudication of guilt the judge shall inform the defendant of the accusation against him and inquire as to whether he has any cause to show why he should not be adjudged guilty of contempt by the Court and sentenced therefor. The defendant shall be given the opportunity to present evidence of excusing or mitigating circumstances. The judgment shall be signed by the judge and entered of record. Sentence shall be pronounced in open court.